UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN HENRY RUPLE, SR.,

        Plaintiff,

                                                    Case Number 08-14115-BC

v.                                               Honorable Thomas L. Ludington

AMALGAMATED CREDIT UNION,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING COMPLAINT WITH PREJUDICE

On September 25, 2008, Plaintiff John Henry Ruple, Sr., filed a complaint [Dkt. # 1], alleging two counts of violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq. Count I alleges an "improper denial of benefits under ERISA," and count II alleges "interference with rights under ERISA." Plaintiff's causes of action appear to be brought under § 502(a)(1)(B), 29 U.S.C. § 1132, and § 510, 29 U.S.C. § 1140, of ERISA, respectively. As remedies, Plaintiff seeks damages in the amount of $356,135.00, the amount he alleges has vested in his welfare benefit trust account, plus any additional monetary damages to which he may be entitled based on Defendant Amalgamated Credit Union's denial of benefits and termination of his employment.

Now before the Court is Defendant's motion for summary judgment [Dkt. # 8], filed on December 5, 2008. Defendant contends that Plaintiff's claims are barred by res judicata. On December 23, 2008, Plaintiff filed a response [Dkt. # 11], and on February 18, 2009, Defendant filed a reply [Dkt. # 12]. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument

will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I

The facts pertinent to Defendant's res judicata argument are largely undisputed. Plaintiff was employed by Defendant from July 17, 1978, through April 20, 2007. From 1986 through the end of his employment, Plaintiff was Defendant's highest-level executive. His title was initially "manager," and then he became "President/CEO." On January 10, 2007, Defendant suspended Plaintiff, with pay, from his employment. Subsequently, Defendant terminated Plaintiff's employment, effective April 20, 2007. Defendant claims that it took these actions based on wrongdoing by Plaintiff in the course of his employment.

When Plaintiff was employed by Defendant, Defendant provided him with health and dental insurance. In 1986, Defendant instituted a policy whereby it provided employees with lifetime health and dental benefits if they retired after twenty-five years of service with Defendant. As of July 2003, Plaintiff had worked for Defendant for twenty-five years. In the termination letter sent or provided to Plaintiff on April 23, 2007, Defendant informed Plaintiff that he may be entitled to receive COBRA continuation benefits. On May 3, 2007, Plaintiff's counsel sent a letter to Defendant, asserting Plaintiff's contention that "he was assured during the course of his employment that following 20 years of employment, he and his wife would be entitled to the same healthcare coverage that they enjoyed during the period of his employment relationship." On May 16, 2007, Defendant replied that Plaintiff was not entitled to a continuation of benefits other than through COBRA.

Meanwhile, on April 4, 2007, Plaintiff filed a complaint in a Michigan circuit court against

Defendant. *Ruple v. Amalgamated Credit Union*, No. 07-64041-CD3 (Mich. Cir. Ct. filed Apr. 4, 2007). On July 18, 2007, pursuant to a stipulation of the parties, Plaintiff filed an amended complaint in that action. In the amended complaint, Plaintiff alleged a single cause of action under the Michigan Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws 15.361, et seq. The amended complaint stated that Defendant discriminated against Plaintiff by suspending him and subsequently terminating his employment because he reported a violation or suspected violation of a Michigan law and because he opposed practices illegal under Michigan law. Plaintiff alleged injuries "including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice."

Plaintiff sought legal relief, including compensatory damages; exemplary damages; judgment for lost wages, past and future; an award for the value of lost fringe and pension benefits, past and future; an award of interest, costs, and reasonable attorney fees. Plaintiff also sought equitable relief, including, inter alia, an order of reinstatement and an injunction prohibiting further acts of retaliation or discrimination. When Plaintiff was deposed, he stated that, after twenty years of service, "I was supposed to receive health care and dental care for myself and my wife for the rest of our lives." Pl. Dep. Tr. 116. Plaintiff later asserted in testimony that the full health and dental benefits after twenty years of service were part of an oral contract, and that he was claiming the loss of those benefits as a result of his discharge:

Q: With regard to your economic losses you testified that one aspect or one of the losses that you've suffered economically is health insurance, is that right?
A: Yes, it is.
Q: Okay. Did you have - are you claiming a loss of benefits relating to any longevity benefit for health benefits?

    A:  Yes. I had an oral contract that is in writing in the minutes somewhere that after 20 years I would receive full health care and dental care benefits.

    Q:  Okay. And that's one of the losses that you're claiming as a result of your discharge?

    A:  Correct.

*Id.* 299-300.

    The Michigan action was submitted to case evaluation pursuant to Michigan Court Rule 2.403. Plaintiff's case evaluation included consideration of the expense of the medical insurance benefit when calculating damages. The summary provided that Plaintiff sought over two million dollars in economic damages:

> [T]he amount of [Plaintiff's] economic damages is $1,866,526.23. This amount does not include the $356,135.00 that was already accrued for [Plaintiff's] medical benefits prior to his discharge. Therefore, the economic damages alone in this exceed 2 million dollars.

The result of the process was a $500,000.00 evaluation, which was accepted by both parties. Defendant paid Plaintiff the agreed-upon amount, and on April 29, 2008, the state court entered an order dismissing the case with prejudice.

II

    Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574,

581 (6th Cir. 2001). The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

### III

The preclusive effects of former adjudication are referred to collectively by most commentators and practitioners as the doctrine of res judicata. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 (1985). Res judicata consists of two preclusion concepts: issue preclusion and claim preclusion. *Id.*; *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Issue preclusion, which is also referred to as collateral estoppel, generally refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. *Migra*, 465 U.S. at 77 n.1. In other words, under the doctrine of issue preclusion, a plaintiff is barred from relitigating issues of law or fact which were actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if they were decided as part of a different claim or cause of action. *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). By contrast, claim preclusion refers to the effect of a judgment in foreclosing the litigation of a matter that has never been litigated because of the court's determination that it should have been raised in an earlier suit. *Migra*, 465 U.S. at 77 n.1.

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is

determined by the full faith and credit statute." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). The statute provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. Thus, in this case, whether Plaintiff's claims are barred by res judicata must be determined under Michigan res judicata principles.

To establish that res judicata, specifically claim preclusion, bars a party from litigating a claim, Michigan law requires a demonstration of the following elements: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Washington v. Sinai Estate of Greater Detroit*, 733 N.W.2d 755, 759 (Mich. 2007) (internal citations and quotations omitted). Here, the parties do not dispute that the prior action was decided on the merits or that both actions involve the same parties. Rather, the parties dispute whether the claims asserted in this action could have been resolved in the prior state court action.

Plaintiff contends that his ERISA claims could not have been brought in the prior action for two main reasons. First, Plaintiff contends that his claims could not have been brought because they had not accrued at the time that Plaintiff filed his original complaint. ERISA claims do not accrue until a plaintiff discovers an injury resulting from the defendant's unlawful actions. *See, e.g.*, *Alexander v. Bosch Auto. Sys., Inc.*, 232 F.App'x 491, 2007 WL 1424299, at *4 (6th Cir. May 14, 2007). In this case, Plaintiff's ERISA claims accrued when Defendant denied Plaintiff benefits on May 16, 2007. This date is subsequent to the date that Plaintiff originally filed his complaint, April 4, 2007. However, Plaintiff filed his amended complaint in July 2007. Thus, based on their accrual

-6-

on May 16, 2007, Plaintiff's ERISA claims could have been asserted in Plaintiff's amended complaint.

Plaintiff's second contention is that his ERISA claims could not have been brought in the prior state court action because they are within the exclusive jurisdiction of the federal courts, citing 29 U.S.C. § 1132(e)(1). Section 1132(e)(1) provides that "[e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction . . . ." As stated above, Plaintiff's claims appear to be brought under § 502(a)(1)(B), 29 U.S.C. § 1132, and § 510, 29 U.S.C. § 1140, respectively. Assuming this to be true, Plaintiff's § 502(a)(1)(B) claim is within the concurrent jurisdiction of the federal and state courts, but Plaintiff's § 510 claim is within the exclusive jurisdiction of the federal courts. Based on this difference, the question becomes whether each of Plaintiff's claims is barred by res judicata separately.

A

First, res judicata, specifically claim preclusion, bars Plaintiff's § 502(a)(1)(B) claim for an improper denial of benefits in this action. The Michigan court would have had jurisdiction of this claim and it "could have been[] resolved" in that action. *Sinai Estate*, 733 N.W.2d at 759. "Michigan has adopted the 'broad' application of res judicata, which bars claims arising out of the same transaction that plaintiff could have brought but did not . . . ." *Jones v. State Farm Ins. Co.*, 509 N.W.2d 829, 834 (Mich. Ct. App. 1993). Generally, "[t]he test for determining whether two claims arise out of the same transaction and are identical for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the two actions." *Id.* Additionally, the "broad" application of res judicata is appropriate "where the plaintiff has received a physical or pecuniary injury as the result of a single incident and has then attempted to raise different theories

of recovery in separate actions." *Vutci v. Indianapolis Life Ins. Co.*, 403 N.W.2d 157, 162 (Mich. Ct. App. 1987).

In the prior state court action, Plaintiff claimed that he was discharged in violation of the Michigan WPA; one component of the monetary damages that he sought was the loss of lifetime health and dental benefits. Plaintiff asserted a claim for those damages because Defendant had already denied his request for benefits, on the grounds that Plaintiff had not retired, but had been involuntarily terminated by Defendant. Indeed, Defendant informed Plaintiff that he was not entitled to lifetime health or dental benefits within weeks of, if not contemporaneously with, discharging Plaintiff. Thus, just as Plaintiff's WPA claim arose from Defendant's termination of his employment, Plaintiff's ERISA claim for improper denial of benefits arises from Defendant's termination of his employment. Additionally, Plaintiff seeks monetary damages for the same injury, the nonpayment of lifetime health and dental benefits, for which he has already recovered through settlement of the prior action. Thus, Plaintiff's claim that Defendant improperly denied benefits under ERISA is barred by res judicata under Michigan law.

B

Plaintiff's second claim, for interference with his rights under ERISA, requires a separate analysis because a claim under § 510 is within the exclusive jurisdiction of the federal courts. Technically speaking, the claim could not have been brought in the prior action, because the Michigan court would not have had jurisdiction over the claim. However, this alone cannot sustain a finding that Plaintiff's § 510 claim is not barred by res judicata. While "claim preclusion generally does not apply where the plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts . . . ," in

certain situations, "a state court judgment may . . . have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts." *Marrese*, 470 U.S. at 380-82. Nonetheless, "[i]f state preclusion law includes [a] requirement of prior jurisdictional competency, which is generally true, a state judgment will *not* have claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts." *Id.* at 382. *See also Kelley v. John A. Biewer Co. of Schoolcraft, Inc.*, No. 1:91-CV-1032, 1993 WL 186557, at *5 (W.D. Mich. May 21, 1993) (finding that "jurisdictional competency is a prerequisite for a judgment in Michigan"). Thus, Plaintiff's § 510 claim is not barred by claim preclusion.

However, that is not the end of the analysis. Defendant emphasizes that, although Plaintiff contends that his claim for interference with his rights under ERISA is brought under § 510, Plaintiff has requested only monetary damages and not equitable relief. While monetary damages are available when benefits subject to ERISA are denied, giving rise to a claim under § 502(a)(1)(B), the only available remedy for an interference claim under § 510 of ERISA is equitable relief under § 502(a)(3).

Furthermore, even if Plaintiff were to amend his complaint to seek equitable relief to remedy his allegedly unlawful discharge, such relief would not be appropriate. Plaintiff has already obtained monetary damages to compensate him for his injuries resulting from his discharge. In the prior action, Plaintiff alleged injuries "including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice." Plaintiff's earlier action also sought equitable relief, including, inter alia, reinstatement. Thus, there is no remaining injury for equitable relief, or even additional damages,

to redress. *Gen. Tel. Co. of the N.W., Inc. v. E.E.O.C.*, 446 U.S. 318, 333 (1980) (generally stating that "the courts can and should preclude double recovery by an individual" and when "overlapping remedies" are at issue, equitable relief should be adjusted to account for damages previously recovered). *See also Kelley*, 1993 WL 186557, at *3 (finding that issue preclusion prevented relitigation of the issue of damages on a subsequent claim within exclusive federal jurisdiction when a consent agreement conclusively settled the issue of damages for the injury that existed up until entry of the agreement).

IV

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt # 8] is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint [Dkt. # 1] is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 24, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 24, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS